# CASES

IN

# THE SUPREME COURT

OF

# *PENNSYLVANIA.*

## CAMPBELL *against* KNOX.

C. having sold a tract of land to which K. had a claim, executed a single bill to K. for a certain sum in discharge of his claim to the land, to be paid out of the purchase money. And the parties agreed that each should be present when the purchase money should be paid, and receive his own part. K. gave notice to the purchaser not to pay his money to C. but to himself ; that he was willing to take him (the purchaser) for it. The purchaser afterwards failed, and was unable to pay the money. In an action by K. against C. on the single bill, it was held that he was not entitled to recover.

ERROR to the Common Pleas of *Armstrong* county.

This was an action of debt upon a bond, in which *Michael Campbell* and *Charles Campbell,* executors of *Charles Campbell,* deceased were plaintiffs, and *George Knox* was defendant. The facts of the case appear so fully in the opinion of his honor, who delivered that of the court, that they need not be again stated.

*White* and *Stannard* for plaintiffs in error.

*Fetterman* for defendant in error.

The opinion of the court was delivered by

KENNEDY, J.—This was an action of debt founded upon a single bill in the following words : " Know all men by these presents that I, *Charles Campbell,* of *Indiana* county, for certain considerations, am held and firmly bound to deliver unto *George Knox,* of *Armstrong* county, thirteen hundred and fifty dollars of the price of a tract of land, sold by the parties to Messrs. *Whiting & Co.* of *Pittsburg,* agreeably to an article of agreement between

VOL. III.                                        2

(Campbell *v.* Knox.)

said parties, and I do engage that said *Knox* is to have the above sum clear of all incumbrances. Given under my hand and seal this 27th day of June, 1818."

CHARLES CAMPBELL.   [L. S.]

Immediately under the bond, on the same paper, was written the following agreement : "It is expressly agreed by the above parties, that at the payments from *Whiting & Co.* of *Pittsburg*, of the purchase money of a tract of land, that neither shall have power to receive any part of said money, without giving the other party sufficient notice to attend and receive their own share, and the same principle to govern if the land should be sold to any other person. Given under our hands and seals,

CHARLES CAMPBELL,   [L. S.]<br>GEORGE KNOX.   [L. S.]

The tract of land referred to in the above single bill and agreement, was one of four tracts sold by *Charles Campbell* the obligor, to *Whiting & Co.* by articles of agreement. This tract was one to which *Knox*, the plaintiff, had a claim, by virtue of a settlement made on it by him ; but *Campbell* had a warrant for it in the name of *McLean*, under which he likewise claimed. It was however agreed between them, that *Campbell* should sell it, with the three tracts to which he had titles, to *Whiting & Co.* and become accountable to *Knox* for thirteen hundred and fifty dollars for his claim under his settlement, to be paid in three equal annual instalments, in like manner as *Campbell* should receive the purchase money of the whole four tracts from *Whiting & Co.* which was to be paid in three equal annual instalments. Upon this arrangement the bond in suit and the agreement there underwritten, were given and entered into. *Whiting & Co.* afterwards failed, and became unable to pay; upon which *Henry Baldwin*, Esq. succeeded them in the purchase of the four tracts of land. It was given in evidence on the part of the defendants that *Knox*, the plaintiff, had directed Mr. *Baldwin*, who was to pay the purchase money for the four tracts of land, not to pay the thirteen hundred and fifty dollars, that was coming to him, from *Charles Campbell*, but to keep it in his own hands, and to pay or account to him *(Knox)* for it. It did not appear that *Whiting & Co.* had paid any part of the purchase money to *Campbell*. It was also testified on the part of the defendants below, that *Knox* had said that his money (speaking of the thirteen hundred and fifty dollars,) was now safe ; that he had got Mr. *Baldwin* for it:— that he did not want it ; that he would leave it in his hand until he wanted it ; that Mr. *Baldwin* had offered him a tract of land for it, but there was too much meadow ground on it. That he would get Mr. *Baldwin* to buy him a particular tract of land for it; and that he had discharged Mr. *Baldwin* from paying the money

to *Charles Campbell:* that this was repeated at two or three different times to one witness, and in substance at different times to several witnesses, who were qualified and gave testimony on the part of the defendant, below. Mr. *Baldwin* also testified, that *Knox* told him not to pay the thirteen hundred and fifty dollars to *Campbell*, but to retain it and pay it over to him ; that he mentioned this to *Campbell* when he came to receive and settle for the purchase money with him : that *Campbell* assented to it, and agreed that Mr. *Baldwin* should take a credit on the article of agreement for the thirteen hundred and fifty dollars which he agreed to pay to *Knox*. *Campbell*, as appeared from the testimony, received all or nearly all the residue of the purchase money for the four tracts of land of Mr. *Baldwin*, after deducting the thirteen hundred and fifty dollars, which *Knox* had forbidden him to pay to *Campbell*.

After the testimony was closed, the counsel for the defendants, below, requested the court to charge the jury, that if they believed that the plaintiff gave notice to the Messrs. *Whiting & Co.* and to Mr. *Baldwin* not to pay the money to *Charles Campbell*, that he cannot recover in this action, without shewing, that the money has been actually paid to said *Campbell*. And again, to charge the jury, that if they believed that notice was given by the plaintiff, either in person or by his agent, to the Messrs. *Whiting & Co.* and to Mr. *Baldwin*, or either of them, not to pay the money now claimed to the said *Charles Campbell*, that the said *Charles* had a right to receive his share of the money without giving notice to the plaintiff of the time and place of receiving it.

The first, second, and third errors assigned, were abandoned on the argument. The remaining four errors will be connected together, as they must all be referred to the same part of the charge of the court below, which is in the following words : " There can be no doubt from the whole testimony, that *Baldwin* assumed to pay that sum, thirteen hundred and fifty dollars, to the plaintiff. But there is none from which it can be reasonably inferred, that he at any time, or on any occasion, took Mr. *Baldwin* for the money and discharged Mr. *Campbell*, the only person who was under any legal obligation to pay it, on a compliance by *Whiting & Co.* with their contract, or by those who came into their place and stead. According to the deeds of *Campbell* to *Baldwin*, who succeeded to the rights of *Whiting & Co.* sooner or later, whenever that contract was carried into complete effect, *Campbell* thereupon became liable to pay the plaintiff the sum stipulated, whether *Campbell* had received the whole or a part or only what was his own share. The old man, the plaintiff, talked rashly and even indecorously on some occasions, if you believe one of the witnesses ; but even to him, so far as I recollect his testimony, there

was no direct discharge of *Campbell* from his contract, although he may have then supposed Mr. *Baldwin* a surer mark for his money." Again the president judge who delivered the charge of the court to the jury, therein says, "As to the hypothetical questions put on both sides, I deem it unnecessary to take up any time in resolving them."

It appears to me that the court below were in error in telling the jury that there was none of the testimony from which they could reasonably infer that *Knox* had at any time on any occasion taken Mr. *Baldwin* for the money and discharged Mr. *Campbell*. It is obvious from the terms of the obligation and the agreements, that *Campbell* was not bound to pay, nor was he liable to pay the thirteen hundred and fifty dollars to *Knox* until he should receive it himself upon the contract which he had made or might make for the sale of the land, or at least neglected to receive it when he had it in his power to obtain it. If this is a correct exposition of the obligation and contracts between the parties, of which there can be no doubt, it necessarily follows, that any interposition of *Knox*, by which he prevented *Campbell* from receiving the money, and obtained an agreement to have it paid directly to himself, when he should want or call for it, was a discharge of *Campbell* from his obligation, not only in equity and good conscience, but in law. The court was also in error when they told the jury, that from no part of the testimony could it be reasonably inferred that *Knox* took Mr. *Baldwin* for his money. What other inference can be drawn from his repeated declarations, if the witnesses are to be believed, that he had got Mr. *Baldwin* for his money : that he had now got a gentleman for his money ; was sure of it, and would leave it in his hands till he wanted it. The president judge, again referring to the testimony of the witnesses, says, "but even to him, so far as I recollect his testimony, there was no *direct* discharge of *Campbell* from his contract, although he may have then supposed Mr. *Baldwin* a surer mark for his money." I do not know, perhaps, what the judge here intended by a *direct* discharge, but if his idea was no other than a formal release or discharge given or delivered directly to *Campbell* himself, he was mistaken ; for an acquittance given by *Knox* to Mr. *Campbell* would have indirectly been a discharge to *Campbell*, and so his directing Mr. *Baldwin* not to pay it to *Campbell*, and *Baldwin's* declining to pay to *Campbell* in consequence of this prohibition of *Knox's*, if true, was an indirect, but very effectual discharge of *Campbell* from his obligation. And although all this may have been done by *Knox*, under the mistaken impression that Mr. *Baldwin*, as the judge said, was a surer mark for his money, yet upon his finding that he is not likely afterwards to get his money from Mr. *Baldwin*, he shall not be permitted to return upon Mr. *Campbell*, or his estate

(Campbell *v.* Knox.)

for it.   For if the testimony given on the part of the defendants below is believed, it was a course entirely of *Knox's* own seeking, without any solicitation of *Campbell,* or ever consulting his wishes in respect to it.   By his interference he caused *Campbell* to credit Mr. *Baldwin* with the thirteen hundred and fifty dollars on the agreement for the purchase of the lands; and by his forbidding Mr. *Baldwin* to pay any portion of this sum to *Campbell,* he put it out of the power of *Campbell* to demand or receive it.   If any loss has arisen from this course which has been adopted by him, he has been the occasion of it, and must bear it.   This would even be the rule if *Campbell* and *Knox* were equally innocent in bringing about the cause which has, or is likely to result in the loss; but I do not consider them equally innocent; for if there be fault, it lies altogether at the door of Mr. *Knox.*   I think the court below instead of charging the jury as they did, ought to have told them, that if they believed the testimony of the witnesses on the part of the defendants below, it was their duty to find a verdict in their favor. I further think, that if the court had answered correctly, the hypothetical questions of the defendant's counsel, as the judge was pleased to call them, that they ought to have been answered in favor of the defendants below; and that there was error therefore in the court's declining to answer them.

Judgment reversed and a *venire de novo* awarded.